| | | |
|---|---|---|
| David L. Snyder, Esq. (5936)<br>SNYDER & SNYDER, LLP<br>94 White Plains Road<br>Tarrytown, NY 10591<br>(914) 333-0700<br>*Counsel for Plaintiffs* | Timothy R. Smith, Esq. (4798)<br>619 Alexander Road<br>Third Floor<br>Princeton, NJ 08540<br>(609) 987-8899<br>*Counsel for Defendants* | **RECEIVED**<br><br>NOV 18 2011<br><br>AT 8:30_____M<br>WILLIAM T. WALSH<br>CLERK |

UNITED STATES DISTRICT COURT
DISTRICT COURT OF NEW JERSEY

------------------------------------------------------------X
:
GLOBAL SIGNAL ACQUISITIONS LLC and  :  Case No. 3:11-CV-00597-JAP-LHG
GLOBAL SIGNAL ACQUISITIONS IV LLC,  :
:
                Plaintiffs,  :  **JOINT STIPULATION** and
- against -  :  **ORDER of SETTLEMENT**
:
NASSAU BROADCASTING HOLDINGS INC.,  :  ECF Case
NASSAU TOWER HOLDINGS LLC, NASSAU  :
TOWER REALTY LLC, and NASSAU  :
BROADCASTING I, LLC  :
:
                Defendants.  :
:
------------------------------------------------------------X

      **WHEREAS**, Plaintiffs commenced this federal action by Complaint dated January 24, 2011 (the "Federal Action") against the Defendants Nassau Tower Holdings, LLC ("NTH") and Nassau Tower Realty, LLC ("NTR") and others; and

      **WHEREAS**, Plaintiff Global Signal Acquisitions LLC commenced a companion case in New Jersey State Court in Superior Court (Atlantic County) against Defendant NTH which has been assigned Docket No. L-1287-11 (the "State Action"); and

      **WHEREAS**, the Plaintiffs NTH and NTR have reached a settlement intended to resolve each of the above described actions; and

7. Each party to Stipulation of Settlement shall be responsible for its own fees, costs and expenses, including without limitation, its own counsel fees. Plaintiffs shall not be responsible for any federal, state or local, sales, transfer, gains or any like tax which may be imposed in connection with the actions to be undertaken by any party under this Stipulation of Settlement.

8. The terms and conditions of this Stipulation of Settlement shall be binding upon and inure to the benefit of the parties hereto, together with their respective legal representatives, parents, affiliates, subsidiaries, successors and assigns.

9. The parties to this Stipulation of Settlement agree to execute any and all further documents which may be reasonably required to effectuate the terms of this Stipulation of Settlement.

10. New Jersey law shall govern the enforcement of this Stipulation of Settlement and any action or proceeding to enforce this Stipulation of Settlement shall be brought before this Honorable Court.

[Signatures on Following Page]

**IN WITNESS WHEREOF**, this Stipulation of Settlement is executed and sworn to as follows:

For Plaintiffs

*[signature]*

David L. Snyder, Esq. (5936)
Snyder & Snyder LLP
94 White Plains Road
Tarrytown, NY 10591
914.333.0700

Dated: 11/7, 2011

For Defendants

*[signature]*

Tim Smith, Esq. (4798)
619 Alexander Road, Third Floor
Princeton, NJ 08540
609.987.8899

Dated: 11/8, 2011

IT IS SO ORDERED:

*[signature]*

~~HON. LOIS GOODMAN~~
~~United States Magistrate~~
**United States District Court**
**District of New Jersey**
Dated: Nov 18, 2011

## Exhibit A

### List of 9 Leases to Be Amended

| No. | BUN | Site Name | Landlord Name |
|---|---|---|---|
| 1. | 881384 | 107 Paxinosa Road | NASSAU TOWER HOLDINGS LLC |
| 2. | 881393 | 46 Clayton Road | NASSAU TOWER HOLDINGS LLC |
| 3. | 881400 | 1100 Hamburg Avenue | NASSAU TOWER HOLDINGS LLC |
| 4. | 881401 | 1671 Woodside Ave | NASSAU TOWER REALTY LLC |
| 5. | 881404 | Rt 9 Bayville | NASSAU TOWER REALTY LLC |
| 6. | 881412 | 103 Locktown Road | NASSAU TOWER REALTY LLC |
| 7. | 881419 | Totts Gap Road | NASSAU TOWER HOLDINGS LLC |
| 8. | 881421 | 275 Lincoln Highway | NASSAU TOWER HOLDINGS LLC |
| 9. | 881427 | GODFREY RIDGE ROAD | NASSAU TOWER HOLDINGS LLC |

## **Exhibit B**

The Hamburg Agreement

\\server3\D\SSDATA\WPDATA\SS2\DLS\Crown\Nassau Broadcasting\Settlement Discussions\Joint Stipulations of Settlement\Stipulation of Settlement - No Bankruptcy Provisions (11-02-11).doc

8

Site Name: Hamburg ID 3029757  
Site Address: 1100-1122 Hamburg Avenue, Egg Harbor  
County: Atlantic  
State: New Jersey  
Coordinates: Latitude 39-32-49 Longitude 74-38-19

Lessee's Site Name and ID: Hamburg  
1100 Hamburg Ave./Egg Harbor

# TOWER SITE LICENSE

Lessor:  
Global Signal Acquisitions LLC

Lessee: Nassau Tower Holdings, L.L.C.

619 Alexander Road  
Princeton, New Jersey 08540

THIS TOWER SITE LICENSE ("License") is entered into by and between Lessor and Lessee and shall be effective on the date last signed by one of the parties. The Lessor owns or otherwise legally controls a certain tower site ("Site"), which includes a parcel of real property and improvements including buildings, towers, and related structures. The Site is more particularly described on attached EXHIBIT A.

WHEREAS, the Lessee desires to obtain a license for the use of a certain portion of land and tower space within the Site, along with access and utility easements thereto (collectively, the "Premises"), which is more particularly depicted on attached EXHIBIT B.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lessor grants to Lessee a license for the use of the Premises, together with an access and utility easement, under the following terms and conditions:

1. USE: Lessee may use the Premises for the installation, location, operation, maintenance, repair and/or use of certain equipment ("Permitted Equipment"), operating at permitted frequencies ("Permitted Frequencies") as set forth on attached EXHIBIT C.

2. INITIAL TERM: **One hundred twenty (120)** months, commencing on the date of one of the following ("Commencement Date"):  
☐ The earlier of: the initiation of any work at the Site (in which case Lessee agrees to provide a satisfactory written acknowledgement of the Commencement Date prior to any on-site installations or preparatory work); or, _____ [insert date].  
☒ On October 14, 2005.

3. RENEWAL TERMS: Provided that the Lease Agreement dated December 3, 2004 ("Millennium Lease") by and between Nassau Tower Holdings, L.L.C., as lessor (as assigned to Lessor), and Millennium Egg Harbor Asset Holdco, LLC ("Millennium"), which relates to Millennium's use of a certain portion of land and tower space within the Site, is still in effect at the end of the Initial Term hereof, this License shall be automatically renewed for a term of **thirty (30) months**.

4. RENT

(a) INITIAL RENT: The initial monthly rent shall be **$2,999.99** plus any applicable taxes. Rent shall become due and payable whether or not Lessee uses or maintains the Permitted Equipment on the Premises. Lessee shall pay all amounts due to Lessor by check, wire transfer, account auto debit or ACH credit to Lessor's account no later than the first business day of each calendar month that it is due. Payment, if by check, shall be delivered to an address designated by Lessor.

(b) ESCALATION: Three percent (3%) per annum, commencing on the first anniversary of the Commencement Date, and on each anniversary of the Commencement Date thereafter, throughout the initial term of this License and any renewal term.

(c) PAYMENT PERIOD: Rent and any other applicable amounts due hereunder are due in advance, without offset or holdback, and shall be paid monthly.

(d) HOLDOVER. If Lessee holds over with respect to the Site or Premises after expiration of any Initial Term or Renewal Term, the License term with respect to such Site and/or Premises shall revert to a month-to-month term, and rent shall be one hundred fifty percent (150%) of the Rent applicable during the last month of the preceding term. Lessor and Lessee shall each have the right during such month-to-month term to terminate the License term with respect to such hold over, with or without cause, upon thirty (30) days' notice to the other party.

5. UTILITIES: Shall be (one of the following):  
☐ Included in rent ("Bundled").  
☐ Not included in rent. Lessee's electrical service shall be separately supplied and metered, and Lessee shall be responsible for all associated costs including installation, metering, and usage.  
☒ Flat Rate in the amount of _____$0.00_____ per month, payable with each rent installment.

NOTE: The electricity rate hereunder assumes an electricity cost of ten (10) cents per kilowatt–hour. Lessor reserves the right to pass through any increases in this rate to lessees paying Bundled or Flat Rate utilities.

6. STRUCTURAL ANALYSIS:  
☒ Completed / Not Required

☐ Pending, pursuant to a separate Structural Authorization Form or similar agreement by and between the parties. To the extent any structural analysis performed by Lessor confirms that Site upgrades, modifications, improvements are required to accommodate Lessee's Permitted Equipment, the full cost thereof shall be borne by Lessee.

**7. PRIME AGREEMENT:** If the Lessor leases the real property on which the Site is located from the owner of the real property, Lessee shall abide by the terms and conditions of the land lease between Lessor and owner (the "Prime Lease") to the extent that such terms and conditions affect the Lessee's use of the Site.

**8. INTERFERENCE:** Lessee's Permitted Equipment shall not cause measurable interference to the equipment of the Lessor or other Lessees of the Site existing as of the date this License is executed by the parties. In the event Lessee's equipment causes such interference, and after Lessor has notified Lessee of such interference, Lessee will take all steps necessary to correct and eliminate the interference. If the interference continues for a period in excess of forty-eight (48) hours following notification, Lessor shall have the right to cause Lessee to cease operating the offending equipment or to reduce the power sufficiently to remove the interference until the condition can be remedied. Lessor agrees that Lessor and other Lessees will be permitted to install only such radio equipment that is of the type and frequency that will not cause measurable interference to the existing equipment of the Lessee.

**9. INSURANCE:** Insurance requirements for Lessee and Lessee's Contractors and Subcontractors are contained in Exhibit "D" attached hereto and are incorporated herein by this reference. In no event shall Lessor be liable for damage to Lessee's equipment, including replacement.

**10. INDEMNIFICATIONS**

(a) LESSOR shall indemnify Lessee against any claim, liability, or loss (including reasonable attorney's fees and court costs) resulting from injury to or death of any person, any damage to property, or loss of revenues due to (i) the acts or omissions of Lessor, its Contractors, subcontractors, agents or representatives; (ii) any breach of this License by Lessor, its contractors, subcontractors, agents or representatives; or (iii) the negligence or willful misconduct of Lessor or its contractors, subcontractors, agents, or representatives.

(b) LESSEE shall indemnify Lessor against any claim, liability, or loss (including reasonable attorney's fees and court costs) resulting from injury to or death of any person, any damage to property, or loss of revenues due to (i) the acts or omissions of Lessee, its Contractors, subcontractors, agents or representatives; (ii) any breach of this License by Lessee, its contractors, subcontractors, agents or representatives; or (iii) the negligence or willful misconduct of Lessee or its contractors, subcontractors, agents, or representatives.

**11. WAIVERS**

(a) LESSOR waives its right to any claim against Lessee, its principals, employees, representatives and agents, for damage to any person or to the Site, the Premises and any improvements thereon, that are caused by, or result from, risks insured against under any insurance policies carried by the Lessor and in force at the time of any such damage and any risks which would be covered by the insurance which Lessor is required to carry hereunder. Lessor will cause each insurance policy obtained by it to provide that the insurance company waives all right of recovery by way of subrogation against Lessee in connection with any damage covered by any policy.

(b) LESSEE waives its right to any claim against Lessor, its principals, employees, representatives and agents, for damage to any person or to the Site, the Premises and any improvements thereon, that are caused by, or result from, risks insured against under any insurance policies carried by the Lessee and in force at the time of any such damage and any risks which would be covered by the insurance which Lessee is required to carry hereunder. Lessee will cause each insurance policy obtained by it to provide that the insurance company waives all right of recovery by way of subrogation against Lessor in connection with any damage covered by any policy.

(c) EACH PARTY HERETO WAIVES ANY AND ALL CLAIMS AGAINST THE OTHER FOR ANY LOSS, COST, DAMAGE, EXPENSE, INJURY OR OTHER LIABILITY WHICH IS IN THE NATURE OF INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES WHICH ARE SUFFERED OR INCURRED AS THE RESULT OF, ARISE OUT OF, OR ARE IN ANY WAY CONNECTED TO THE PERFORMANCE OF THE OBLIGATIONS UNDER THIS LICENSE.

**12. EQUIPMENT INSTALLATION AND REMOVAL**

(a) INSTALLATION: Lessee's Permitted Equipment located in and on the Site or Premises, whether installed overhead, above ground, or underground, shall remain the personal property of the Lessee, and shall not be considered a fixture to the real estate. Prior to installing the Permitted Equipment on the Site, Lessee shall submit engineering drawings, plans and specifications (collectively, "Plans") for Lessor's reasonable approval, after which Lessee shall promptly commence and complete the installation in accordance with the approved Plans. Lessee's installation, and any associated costs including necessary permits or leases shall be at Lessee's sole cost and expense. Lessee may not install equipment at the Site without Lessor's prior written consent, which consent shall not be unreasonably withheld.

(b) REMOVAL: Prior to the expiration or termination of this License, Lessee shall, at its sole cost and expense, remove its equipment from the Premises. If Lessee fails to timely remove its equipment, Lessor shall have, to the full extent of the law: (i) the right to immediate possession of the Premises without invoking legal process; and, (ii) the right (but not the obligation) to immediately disconnect and remove Lessee's equipment from the Site, in which case Lessee shall pay Lessor upon demand an amount equal to the cost of such disconnection, including removal and storage expenses, if any.

### 13. COMPLIANCE

(a) LESSOR shall: (i) obtain and maintain all applicable federal, state and local authorizations necessary to perform its obligations under this License; (ii) comply in all material respects with all federal, state, or local laws, codes and orders which may affect the tower, the Site or this License; and, (iii) maintain the Site in compliance with FCC rules pertaining to lighting, marking, inspection, and maintenance.

(b) LESSEE shall: (i) obtain and maintain all applicable federal, state and municipal authorizations necessary to perform its obligations under this License; (ii) comply in all material respects with all federal, state, or local laws, codes and orders which may affect the tower, the Site or this License; (iii) maintain, in full force and effect, its lease(s) with respect to Permitted Equipment and Permitted Frequencies; (iv) not permit any third party to operate its Permitted Equipment, or at its Permitted Frequencies; and, (v) promptly pay all charges, taxes, assessments and fees (exclusive of income taxes) which may be imposed by any governmental authority on or in connection with this License.

### 14. MAINTENANCE

(a) LESSOR may reasonably inspect the Site, including the Premises, and may make any necessary repairs, modifications, additions or replacements to the Site, including the Premises, any building, or any tower, and perform any work that may be necessary to prevent interference, waste or deterioration or to comply with applicable laws and regulations, or to perform the obligations of Lessee should it fail to do so as required herein. Lessor reserves the right to replace or rebuild any tower, building, or structure on the Site.

(b) Lessee shall paint its Permitted Equipment to match the tower to ensure that the tower is in full compliance with applicable FCC, FAA or other rules or regulations governing the tower. Lessee shall surrender possession of the Premises to Lessor in the same condition it was at the commencement of this License, ordinary wear and tear and casualty excepted.

### 15. WARRANTIES AND REPRESENTATIONS

(a) FCC QUALIFIED: Lessee represents and warrants that it is legally qualified under applicable FCC rules, regulations, and/or guidelines to own and operate its Permitted Equipment and Permitted Frequencies and covenants that it will operate its Permitted Equipment and Permitted Frequencies within all material technical parameters of, and otherwise according to, all FCC rules, regulations, and the electrical code(s) of the applicable city, county and/or state and, with respect to Lessee's hiring of tower climbers, the Occupational Safety and Health Act.

(b) SATISFACTION WITH SITE: Lessee represents that it has independently examined the tower, the building, and the Site in general, and has determined that each are suitable for Lessee's intended use, and each are satisfactory to Lessee. Lessee accepts the Premises and the Site in "as is" condition and acknowledges that Lessor has no obligation to make alterations or improvements to the Premises or the Site, except as may be agreed to by the parties elsewhere herein.

(c) ENVIRONMENTAL: Lessee represents, warrants, and covenants to Lessor that Lessee at no time during the term of this License shall use or permit the use, generation, storage, treatment, or disposal of any hazardous substance, material, chemical, or waste on the Site in violation of any Environmental Regulations (as such term is defined in below). Lessee's use of the Premises will not involve the subsurface, except for those Premises where the placement of a foundation is required for Lessee's equipment and/or facilities, and approved by Lessor. For the purposes of this clause, the term "Environmental Regulations" shall mean any law, statute, regulation, order or rule now or hereafter promulgated by any governmental authority, whether local, state or federal, relating to air pollution, water pollution, noise control and/or transporting, storing, handling, discharge, disposal or recovery of on-site or off-site hazardous substances or materials, as same may be amended from time to time.

(d) COOPERATION: Each party hereto shall reasonably cooperate with the other party with regards to any actions, filings, approvals, permits or leases necessary for the parties to exercise their respective rights hereunder. Lessee shall cooperate with Lessor in its reasonable rescheduling of transmitting activities, reducing power, or interrupting Lessee's activities for reasonably limited periods of time in order to permit the installation, modification, repair, replacement or maintenance of the equipment of any user of the Site or the Premises.

(e) ESTOPPEL CERTIFICATES: Each party hereto shall, upon reasonable notice, execute, acknowledge, and deliver to the other party a statement in writing certifying that this License is unmodified and in full force and effect (or, if there have been any modifications, that the License is in full force and effect as modified and stating the modifications), the dates to which rent and other charges, if any, have been paid in advance, and such other information as may be reasonably requested.

(e) LIENS: Lessee will not allow any liens of record to stand against the Site by reason of work, service, or materials, supplied through or under Lessee ("Mechanics' Liens"). Lessee shall cause any Mechanics' Lien filed against the Site to be discharged (by payment, deposit or bond) of record within thirty (30) days after the date Lessee receives notice that the lien has been filed.

### 16. FORCE MAJEURE AND SITE DAMAGE

(a) FORCE MAJEURE: The time for performance by Lessor or Lessee of any term, provision, or warranty of this License shall be deemed extended by time lost due to delays resulting from acts of God, strikes, civil riots, floods, material or labor restrictions by governmental authority, or other cause not within the reasonable control of the Lessor or Lessee.

(b) SITE DAMAGE: If a Site is fully or partially destroyed or damaged, and as a result thereof Lessee is unable to conduct its operations on such Site for a period of at least seventy-two (72) hours in a manner that is functionally equivalent to Lessee's operations before such event, Lessor shall notify Lessee, within ten (10) days after such event, whether or not it intends to consider rebuilding or otherwise restoring the applicable Site and/or condition. If Lessor elects not to rebuild or otherwise restore the Site or remedy the condition, this License shall automatically terminate effective the date the Site was originally damaged. However, if Lessor elects to rebuild or repair the Site, it shall notify Lessee of that election and Lessee shall then have five (5) business days thereafter to either (i) terminate this License as of the date the Site was originally damaged; or (ii) agree to the continuation of this License. If Lessee agrees that this License shall continue, Lessor shall, thereafter, evaluate whether it is commercially reasonable to restore the Site following receipt of responses from each of its other customers on the Site and, if Lessor, in its sole discretion, determines that it is commercially reasonable to restore the Site, Lessor shall undertake to do so. If Lessor elects to repair or rebuild the Site, this License shall remain in force with respect to such Site, but Lessee shall be entitled to an abatement of Rent for the time it is unable to conduct its normal operations.

**17. DEFAULT**

(a) GENERALLY: A party shall be in default hereunder if it fails to make any payment on or prior to the date due, and does not cure such non-payment within ten (10) days after receiving written notice. A party shall also be in default hereunder if it fails to comply with any other term of this License and does not cure such other failure within thirty (30) days after the non-defaulting party provides the defaulting party with written notice thereof; provided however, that if any such non-monetary default is not capable of being cured within the requisite period of time, then so long as the party charged with the default has diligently pursued such cure of the default within the prescribed period, such party shall be given reasonable time to cure the default, such time not to exceed ninety (90) days, unless a shorter period is expressly required under the terms of this License.

(b) LESSOR REMEDIES: Upon the occurrence of any Lessee default that is not timely cured, Lessor may, subject to the terms of this section, seek any remedy available at law or equity, including disconnection and removal of Lessee's equipment from the Site at the expense of Lessee.

(c) LESSEE REMEDIES: Upon the occurrence of any Lessor default that is not timely cured, Lessee may, subject to the terms of this section, seek any remedy available at law or equity, including the right to specific performance or the right to terminate the License.

**18. TERMINATION:** Lessor may terminate this License if any law, rule, regulation, ordinance or directive of any governmental agency prohibits or otherwise restricts the use of all or any portion of the Site, including any tower or structure thereon, for the purposes contemplated by this License.

**19. ASSIGNMENT:** Lessee shall not assign or transfer this License, in whole or in part, or sublet or permit the Site, the Premises, its Permitted Equipment, or any part thereof to be used by others without the express written approval of Lessor; provided, however, that Lessee may assign this License without the prior consent of Lessor, but with prior thirty (30) days' written notice to Lessor, to any party who (a) holds a Federal Communications Commission license to operate the equipment to be used on the Premises and (b) assumes all of the obligations of Lessee under this License. No such assignment shall relieve Lessee of its obligations under this License after such assignment unless (A) the assignee or successor entity has a net worth at least equal to the greater of (i) Lessee's net worth at the time of execution of this License, or (ii) Lessee's net worth immediately prior to such assignment or transfer; or (B) the assignee or successor entity has a credit rating, as determined by Standard and Poor's, of BBB- or higher, provided, however, that in the event the conditions in neither (A) nor (B) are met, and therefore Lessee's obligations under this License continue after such assignment, (X) Lessee's obligations shall be relieved upon the expiration of the Initial Term, or the Term in which the assignment or transfer is made if not in the Initial Term and (Y) Lessor and Lessee agree that Lessee may at any time during such term(s) request an assessment of assignee's net worth or credit profile by Lessor (which assessment shall be undertaken at Lessee's sole cost) and Lessor may, in its sole discretion, grant Lessee a release of Lessee's obligations hereunder following Lessor's review of such evaluation. In addition to the foregoing, Lessee may collaterally assign this License to any lender of Lessee and/or may mortgage or otherwise encumber its license interest. It is understood, however, that in no event shall any property of Lessor (real property or personal property) ever be considered part of the collateral or otherwise subject to any lien or encumbrance of Lessee's lender. Lessor may assign, mortgage, or encumber its rights under this License at any time.

**20. EMINENT DOMAIN:** If the Site or Premises upon which a tower, foundation, or building is located are acquired or condemned under the power of eminent domain, whether by public authority, public utility, or otherwise, and as a result thereof Lessee is unable to conduct its operations on such Site in a manner that is functionally equivalent to Lessee's operations before such event, then this License shall terminate as of the date of the acquisition or possession by the condemning authority. Lessor shall be entitled to the entire amount of any condemnation award, and Lessee shall be entitled to make a separate claim for and retain a condemnation award based on and attributable to the expense and damage of removing its fixtures and equipment.

**21. LENDER'S CONTINUATION RIGHTS:** Lessee understands that Lessor has mortgaged or otherwise created a lien on the Site. Accordingly, Lessee agrees that this License shall be subordinate to mortgages or other security instruments executed between Lessor and its lender ("Lender") that affect the Site. Lessee agrees to attorn to Lender in the event that Lender acquires title to the Site. Such attornment will be effective upon Lender's acquisition and shall not be terminated based on foreclosure. Lessee agrees to execute an attornment agreement, from time to time, to the reasonable satisfaction of Lender. Lessee agrees that Lessor is solely responsible for its own actions and that in no event shall Lender be liable to Lessee for acts, omissions, or liabilities arising from the License prior to Lender's acquisition. Lessor shall cooperate with Lessee in reaching a subordination, non-disturbance, and attornment agreement with Lender.

**22. MISCELLANEOUS PROVISIONS**

(a) All Exhibits attached hereto are incorporated herein by this reference.

(b) This License may be executed in counterparts, and any number of counterparts signed in the aggregate by the parties will constitute a single, original instrument.

(c) This License, including the exhibits, schedules, lists and other documents referred to herein, contain the entire understanding of the parties with respect to its subject matter. No modification of this License shall be effective unless contained in a written instrument executed by both parties.

(d) All notices, requests, claims, demands, and other communications hereunder shall be in writing and shall be delivered to the respective parties at the addresses first written above, and as may be amended from time to time. Any such notice may be hand delivered (provided the deliverer provides proof of delivery) or sent by nationally-established overnight courier that provides proof of delivery, or certified or registered mail (postage prepaid, return receipt requested). Notice shall be deemed received on the date of delivery as demonstrated by the receipt of delivery.

(e) Any action brought relating to this License shall be brought in the county in which the applicable Site is located, except that a proceeding for monetary default may be brought in Sarasota County, Florida. This License shall be governed by, construed and enforced in accordance with the laws of the State of Florida.

### 23. STATE SPECIFIC PROVISIONS

**FLORIDA:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**NORTH CAROLINA:** Prior to the commencement of any work to be performed in the State of North Carolina by any contractor or subcontractor retained by Lessee (directly or indirectly), Lessee is solely responsible and liable to Lessor for the delivery to Lessor of a certificate from the North Carolina Industrial Commission stating that such contractor and subcontractor have acted in compliance with G.S. 97-93 of the North Carolina General Statutes.

**TEXAS:** WAIVER OF TEXAS DECEPTIVE TRADE PRACTICES ACT. LESSEE SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT HAS KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS THAT ENABLE IT TO EVALUATE THE MERITS AND RISKS OF ITS TRANSACTION WITH LESSOR, AND THAT IT IS NOT IN A SIGNIFICANTLY DISPARATE BARGAINAING POSITION WITH LESSOR. LESSEE HEREBY WAIVES ALL ITS RIGHTS UNDER THE TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT, SECTION 741, ET. ESQ. OF THE TEXAS BUSINESS AND COMMERCE CODE (THE "DPTA"), A LAW THAT GIVE CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF LESSEE'S OWN SELECTION, LESSEE VOLUNTARILY CONSENTS TO THIS WAIVER.

### 24. CONDITIONAL PROVISIONS (APPLICABLE IF CHECKED)

☐ **CAPITAL EXPENDITURE FEE:** Lessee agrees to pay a one-time fee of $ _____ (Capital Expenditure Fee) in connection with upgrading, modifying, or otherwise retrofitting the Site to accommodate Lessee's Permitted Equipment. The Capital Expenditure Fee is non-refundable under all circumstances, including Lessee's failure to ultimately install on the Site, unless such failure was the direct result of Lessor failing to make reasonable accommodations to initially permit Lessee's on-site installations.

☐ **GOVERNMENT ASSESSMENTS:** This Site is leased or leased from the Bureau of Land Management, the United States Forestry Service or other federal, state or local government authority. Lessee shall pay to Lessor its pro rata share of any and all fees or assessments levied by such governmental authority with regard to the Premises, as well as any fees or assessments invoiced by such authority that are attributable to the Permitted Equipment or Lessee's operations at the Site.

☒ **ADDITIONAL PROVISION(S)**

**25. CROSS-DEFAULT.** Any default by Lessee under this License shall also constitute a default by Lessee under any other license, lease or occupancy agreement between Lessor as landlord/licensor and Lessee as tenant/licensee.

**26. OFFSET.** In the event that Lessee fails to make any payment due to Lessor hereunder, Lessee agrees that Lessor may offset such amount against any amount due and owing by Lessor to Lessee, including any amounts owed by Lessor to Lessee pursuant to any ground lease under which Lessee is the landlord.

*IN WITNESS WHEREOF*, the parties have executed this License as of the date last signed by a party hereto.

WITNESSES:                                LESSOR:
                                          GLOBAL SIGNAL ACQUISITIONS LLC

|  |  |
|---|---|
| Name: _____ | By: _____ |
|  | Name: Ronald G. Bizick II |
|  | As Its: Executive Vice President of Corporate Development |
| Name: _____ | Date: _____ |

WITNESSES:

*[signature]*

Name: _____

Name: _____

LESSEE:
NASSAU TOWER HOLDINGS, L.L.C.

By:   Nassau Holdings, Inc., its sole member

By:   *[signature]*
      Tristram E. Collins
      Executive Vice President

Date: _____

| | |
|---|---|
| _____ | **By:** _____ |
| **Name:** _____ | **Name:** Ronald G. Bizick II |
| _____ | **As Its:** Executive Vice President of Corporate Development |
| **Name:** _____ | **Date:** _____ |

**WITNESSES:**

*[signature]*

**Name:** _____

_____

**Name:** _____

**LESSEE:**
**NASSAU TOWER HOLDINGS, L.L.C.**

**By:**   Nassau Holdings, Inc., its sole member

   **By:**   *[signature]*
   Tristram E. Collins
   Executive Vice President

**Date:** _____

|  |  |
|---|---|
| Name: _____ | By: _____ |
|  | Name: Ronald G. Bizick II |
| Name: _____ | As Its: Executive Vice President of Corporate Development |
|  | Date: _____ |

WITNESSES:

*[signature]*

Name: _____

Name: _____

LESSEE:
NASSAU TOWER HOLDINGS, L.L.C.

By:   Nassau Holdings, Inc., its sole member

By:   *[signature]*
      Tristram E. Collins
      Executive Vice President

Date:   10/13/05

|  |  |
|---|---|
| Name: _____ | By: _____ |
|  | Name: Ronald G. Bizick II |
| Name: _____ | As Its: Executive Vice President of Corporate Development |
|  | Date: _____ |

WITNESSES:

*[signature]*

Name: _____

Name: _____

LESSEE:
NASSAU TOWER HOLDINGS, L.L.C.

By:   Nassau Holdings, Inc., its sole member

   By: *[signature]*
   Tristram E. Collins
   Executive Vice President

Date:   10/13/05

**EXHIBIT A**
(TO TOWER SITE NO. 3029757)

**LEGAL DESCRIPTION
OF THE SITE**

ALL that certain lot, parcel or tract of land, with the buildings and improvements thereon erected, situate, lying and being in the City of egg Harbor, County of Atlantic, State of New Jersey, and being more particularly described as follows:

BEGINNING at a point where the Northeasterly line of Fichte Street (48 feet 4 inches wide) intersects the Southeasterly line of Hamburg Avenue (70 feet wide), and extends thence

1. North 41° 57' East along the said line of Hamburg Avenue 240.00 feet to a point; thence

2. South 48° 03' East 300.00 feet to a point; thence

3. North 41° 57' East 120.00 feet to a point; thence

4. North 48° 03' West 300.00 feet to a point in the said line of Hamburg Avenue; thence

5. North 41° 57' East along the said line of Hamburg Avenue 240.00 feet to a point in the Southwesterly line of Follen Street (48 feet 4 inches wide); thence

6. South 48° 03' East along the same 600.00 feet to a point in the Northwesterly line of New York Avenue (200 feet wide); thence

7. South 41° 57' West along the same 40.00 feet to a point; thence

8. North 48° 03' West 300.00 feet to a point; thence

9. South 41° 57' West 40.00 feet to a point; thence

10. South 48° 03; East 300.00 feet to a point in the said line of New York Avenue; thence

11. South 41° 57' West along the same 520.00 feet to a point in the said line of Fichte Street; thence

12. North 48° 03' West 600.00 feet to the point and place of BEGINNING.

Being the same property conveyed to Nassau Tower Holdings, LLC, a New Jersey limited liability company from Nassau Broadcasting Holdings, Inc., a New Jersey corporation by Deed dated May 27, 2004 and recorded June 2, 2004 in Deed Book 7749, Page 1.

**EXHIBIT B**
(TO TOWER SITE NO. 3029757)

**SITE DRAWING OF THE PREMISES**

**EXHIBIT C**
(TO TOWER SITE NO. 3029757)
**PERMITTED EQUIPMENT AND FREQUENCIES**
(This Exhibit contains, in its entirety, Lessee's inventory of equipment specific to this License.)

# EXHIBIT D
# INSURANCE REQUIREMENTS

**1. LESSEE REQUIREMENTS**

Within five (5) days after the execution of the License, but prior to the commencement of the initial term of such License, Lessee shall provide Lessor with certificates of insurance evidencing required coverage in force for the Site with a thirty (30) day notice to Lessor requirement for cancellation, non-renewal, or material change. Each certificate must be Site specific and name Lessor as an "additional insured" on the each policy, except workers compensation insurance policies. Lessee will cause each insurance policy it obtains to provide that the insurance company waives all right of recovery by way of subrogation against Lessor in connection with any damage covered it. All insurance shall be maintained during the term of the applicable Lease in companies legally qualified to transact business in the state where the applicable Site is located, in companies with an AM Best Rate of A-: VIII or greater, and may not have deductibles exceeding ten percent (10%) of the required coverage. The property insurance coverage may be maintained pursuant to master policies of insurance covering the specific Site, but coverage shall not be reduced at the Site by activities at Lessee's other property.

    **(a) Property:** Lessee shall insure its Permitted Equipment and the property of others for which Lessee is responsible, against all loss or damage, including business interruption, in an amount no less than full replacement value. Lessor shall not provide any such insurance, and assumes no responsibility for damage occurring to Lessee's equipment, or that of Lessee's Contractor's and/or subcontractor's, including business interruption.

    **(b) Business Automobile Liability:** Lessee shall obtain and maintain Bodily Injury and Property Damage Liability insurance on all owned, hired and non-owned vehicles with minimum limits of:

| | |
|---|---|
| Combined Single Limit | $1,000,000.00 |

    **(c) Commercial General Liability:** Lessee shall obtain and maintain bodily injury liability, property damage liability, products and completed operations liability, broad form property damage liability and personal injury liability coverage in the following amounts:

| | |
|---|---|
| Policy Form | Occurrence |
| General Aggregate Limit | $1,000,000.00 |
| Products & Completed Operations Limit | $1,000,000.00 |
| Personal Injury & Advertising Injury Limit | $1,000,000.00 |
| Each Occurrence Limit | $1,000,000.00 |
| Damage to Rented Premises | $ 100,000.00 |
| Medical Expense Limit | $ 5,000.00 |

    **(d) Workers Compensation:**

| | |
|---|---|
| Employers Liability (State of the site location) | Statutory |
| Limit each accident | $ 100,000.00 |
| Limit disease aggregate | $ 500,000.00 |
| Limit disease each employee | $ 100,000.00 |

**2. LESSEE'S CONTRACTORS AND SUBCONTRACTORS**

Lessee shall require its Contractor and Subcontractors ("Contractors") to carry, in addition to the above, umbrella/excess liability insurance with minimum limits according to the following:

    **(a) General Site Maintenance:** Contractors performing General Site Maintenance, defined as: (a) Grounds and vegetation maintenance and installation not requiring heavy equipment, or (b) Minor repairs and installations to existing facilities (locks, plumbing, fencing, air conditioning, etc.):

| | |
|---|---|
| Each occurrence limit | $1,000,000.00 |
| General aggregate limit | $1,000,000.00 |

    **(b) Site Work:** Contractors working on the Site (other than General Site Maintenance), but not on the tower:

| | |
|---|---|
| Each occurrence limit | $3,000,000.00 |
| General aggregate limit | $3,000,000.00 |

    **(c) Tower Climbers:** Work at a Site in <u>any</u> capacity which requires climbing the tower:

| | |
|---|---|
| Each occurrence limit | $5,000,000.00 |
| General aggregate limit | $5,000,000.00 |